STATE v. JAMES SPIVEY.

(Filed 7 May, 1930.)

1. **Homicide G a—Evidence of defendant's guilt of murder in the first degree held sufficient.**

Where there is evidence tending to show that the defendant on trial for a homicide had proposed marriage to the deceased upon condition that she first submit her person to him, and that at night the deceased and the defendant went into the yard to investigate a noise they had heard, and that soon the defendant returned and stated that the deceased had been struck by some one, with further evidence that an ax that had been left at the place of the homicide had been thrown through some bushes and found with blood spots on it, and that the deceased had been killed by a blow from a blunt instrument and had been raped, and that the defendant was the one who had committed the rape, is *held:* sufficient with other evidence to be submitted to the jury and deny defendant's motion as of nonsuit. C. S., 4643.

2. **Criminal Law I g—Error in stating contentions of defendant held harmless when charge construed as a whole.**

Where the prisoner on trial for murder introduces no evidence and relies upon his motion as of nonsuit, error of the trial court in stating his contentions that the defendant admitted that the deceased's death resulted from a blow with an ax or deadly weapon, will not be held as reversible error when it appears that the court was referring to evidence of a statement made by the prisoner at the time of the crime, and must have been so understood by the jury when considered in its immediate connection and in the light of the whole charge.

3. **Criminal Law G a—Where the defendant introduces no evidence the question of guilt is for the jury under the presumption of innocence.**

A defendant in a criminal prosecution may rely upon the presumption of his innocence, which remains with him throughout the whole trial, and introduces no evidence in his own behalf, and though this may not be

without its moral effect on the jury, it does not of itself create a presumption against him as a matter of law, and is not a proper subject of comment by the solicitor in his argument, and the question of his guilt is for the determination of the jury from the evidence, with the burden on the State to prove him guilty beyond a reasonable doubt. C. S., 1799.

APPEAL by defendant from *Barnhill, J.,* at October Term, 1929, of LEE.

Criminal prosecution tried upon an indictment charging the prisoner with the murder of one Bettie Spivey.

The evidence on behalf of the State tends to show that on the night of 21 September, 1929, Bettie Spivey was struck on the back of the head with an ax, or some blunt instrument, and died shortly thereafter from the effects of the blow.

The deceased and her sister, Josie Spivey, were entertaining two young men, Willie Morgan and the defendant, James Spivey, on the night in question at the home of their father, who is a tenant farmer living in Lee County. Willie Morgan was calling on Josie Spivey, while the defendant was paying court to the deceased, and had previously proposed to marry her on condition that she surrender her person to him prior to the marriage, but which condition she had declined to meet. The other members of the Spivey family, Silas, the father, and Lillian, a third daughter, had retired for the night, leaving these four young people together in the same room. At about eleven o'clock Bettie Spivey left the room and soon returned with a pair of silk hose, which she showed to the others, and teasingly told James Spivey that they had been given to her by another fellow. When she went to get the stockings, she thought she observed some one in the yard walk past the window, and reported this fact upon her return. The defendant remarked that perhaps it was an officer looking for him. He also claimed to have seen some one pass the window.

As there had been some recent cow stealing in the neighborhood, Bettie Spivey suggested to the defendant that they go out to the barn, which was 30 or 40 yards from the house, to see if her father's cow had been, or was being, molested by any one. For this purpose, she went out of the house, and the defendant followed her, closing the door behind him. About eight or ten feet to the right of the path, going to the barn, was a cedar tree, against which an ax was leaning, which had been left there by one of the girls that afternoon or evening.

Fifteen or twenty minutes after Bettie and James Spivey left the house, the defendant returned, opened the door, and said that some one had knocked Bettie down. Josie hurriedly aroused her father and sister, Lillian, and rushed out to the cow barn. There she found Bettie lying

upon her back, with her head stricken, and bleeding profusely. Her clothes were up above her knees and her legs far apart. James Spivey stated that he stopped at the cedar tree while Bettie went on to the barn lot. He said he heard a lick, "ker-bam-like," looked up and saw two men running off in the direction of L. V. Hale's house, and that there was no time for Bettie to have been criminally assaulted.

Willie Morgan did not go to the barn or stay to ascertain the extent of Bettie's injuries, but left for his home as soon as the defendant announced that she had been hurt. He said he left precipitately because he was afraid to stay. The defendant, on the other hand, remained to render any assistance he could, and did help to carry the deceased in the house, went for the doctor and called the officers.

Within a couple of hours the sheriff and two assistants, as well as the coroner of the county, Dr. J. F. Foster, had arrived at the Spivey home. An investigation and examination showed that the deceased had been raped and hit on the back of the head with some blunt instrument, from which she died almost instantly. There were no bruises on her face or neck. The small ax, which had been left leaning against the cedar tree, could not be found that night, but it was discovered the next morning some distance away, with blood spots on it, apparently having been thrown through a break in the hedge, for when it fell upon the ground it slid about one-half the length of its helve. No tracks were to be found along or about the place where the defendant said he saw two men running. An examination by the coroner of the person of the defendant that night indicated unmistakably that he was the one who committed the rape.

The defendant offered no evidence, but lodged a motion at the close of the State's case for judgment as of nonsuit under C. S., 4643. (Overruled and exception.)

Verdict: Guilty of murder in the first degree.

Judgment: Death by electrocution.

The prisoner appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Gavin, Teague & Byerly and H. M. Jackson for defendant.*

STACY, C. J., after stating the case: The evidence is amply sufficient to carry the case to the jury. It points unerringly to the prisoner's guilt and apparently excludes every reasonable hypothesis of his innocence. *S. v. McLeod,* 196 N. C., 542, 146 S. E., 409; *S. c., ante,* 649. The State's showing in the instant case is fully as strong, if not stronger, than that in *S. v. Wilcox,* 132 N. C., 1120, 44 S. E., 625, where a con-

viction was sustained. The following authorities may also be cited in support of the court's action in overruling the defendant's demurrer to the evidence: *S. v. Allen,* 197 N. C., 684; *S. v. McKinnon,* 197 N. C., 576; *S. v. Lawrence,* 196 N. C., 562, 146 S. E., 395; *S. v. Melton,* 187 N. C., 481, 122 S. E., 17; *S. v. Young,* 187 N. C., 698, 122 S. E., 667; *S. v. Griffith,* 185 N. C., 756, 117 S. E., 586; *S. v. Bynum,* 175 N. C., 777, 95 S. E., 101; *S. v. Matthews,* 162 N. C., 542, 77 S. E., 302; *S. v. Taylor,* 159 N. C., 465, 74 S. E., 914.

The following excerpt, taken from the charge, forms the basis of one of defendant's exceptive assignments of error, which he stressfully contends entitles him to a new trial.

"He admits that she came to her death on account of a blow on the base of her skull inflicted by some unknown person, that is, he admits that she was struck on the base of the skull with an ax or some other deadly weapon, and that that brought about her death."

The prisoner complains at this instruction because it represents him as making an admission, when, in fact, no admission was made by him and no evidence offered in his behalf.

The court was here stating the contentions of the parties, and what he meant to say, and, we apprehend, did say, within the necessary understanding of the jury, was that, according to the prisoner's own statement, made that night, he heard the blow which caused her to be felled by some unknown person, for, in this immediate connection, the court added: "but (the prisoner) contends that there are no facts or circumstances which show that he was the person that inflicted the blow, and that he is not guilty." We perceive no error in the contention, thus given, when considered in its immediate connection and in the light of the whole charge. *S. v. Parker, ante,* 629.

The remaining exceptions, all of which have been examined with scrutiny and care, are equally untenable, and present no new question of law or one not heretofore settled by a number of decisions.

The fact that the defendant offered no evidence, but relied upon the legal presumption of innocence and the weakness of the State's case, is not to be taken against him. C. S., 1799. The presumption of innocence which surrounds a defendant on his plea of "not guilty," goes with him throughout the trial and is not overcome by his failure to testify in his own behalf. He is not required to show his innocence. The burden is on the State to prove his guilt beyond a reasonable doubt. *S. v. Singleton,* 183 N. C., 738, 110 S. E., 846. And while his absence from the witness stand or his failure to testify, may be a circumstance not without its moral effect upon the jury, of which every lawyer appearing for a defendant is always conscious, yet this fact, as a matter of law,

creates no presumption against him, and is not a proper subject for comment by the solicitor in arguing the case to the jury. *S. v. Tucker,* 190 N. C., 708, 130 S. E., 720.

The record discloses no error committed on the trial, hence the verdict and judgment will be upheld.

No error.